GIANT MANUFACTURING COMPANY V. ARLON B. DAVIS.

No. 7103. Decided November 30, 1938.
Rehearing overruled January 11, 1939.
(121 S. W., 2d Series, 590.)

*Russel and Beaucaire,* of San Antonio, for plaintiff in error.

Where the wording of a contract is plain and unambiguous it was error for the court to submit the construction of such contract to the jury, but it is the court's duty to construe same. Taliaferro v. Cundiff, 33 Texas 415; Barker v. Johnson, 154 S. W. 609; Booth v. Campbell, 240 S. W. 559.

It was also error to admit opinion testimony of the usages and customs pertaining to the business over timely objection, in view of the plain terms of the contract. Thompson Brothers v. Lynn, 81 S. W. 330; Petterson v. Clay, 225 S. W. 1112; Dupuy v. Burkitt, 78 Texas 338, 14 S. W. 789.

*Harry B. Berry,* of Kerrville, for defendant in error.

Where the written contract is ambiguous, uncertain, incomplete, or inconsistent, evidence is admissible to explain or dispel its defects, because of the doubtful language, and to have all possible light and a better understanding of the intentions of the parties, but not for the purpose of altering or changing the instrument. Epperson v. Young, 8 Texas 135; Smith v. Brown, 66 Texas 543, 1 S. W. 573; Higginbotham Co. v. Whaley, (Com. App.) 41 S. W. (2d) 34.

Mr. Judge Taylor delivered the opinion of the Commission of Appeals, Section B.

Defendant in error, Arlon B. Davis, filed this suit against Giant Manufacturing Company, plaintiff in error, to collect a commission alleged to be owing him for the sale of forty

floodlight projectors to the San Antonio Baseball Club. Trial with the aid of a jury resulted in a judgment for Davis for a part of the amount sued for and against the company on its cross actions. The company appealed and the Court of Civil Appeals affirmed the judgment. 91 S. W. (2d) 1099.

Davis declared upon a written district sales manager contract between him and the company seeking recovery of $1200.00 claimed as the balance of a commission due him under the terms of his contract for making the sale. The aggregate catalog list price of the projectors was $8000.00 and the net price alleged by Davis to have been paid by the customer was $5200.00. The provision for compensation to the seller, in the language of the contract, is "a commission representing the difference between forty per cent (40%) off catolog list prices and the net price paid by customer."

Davis filed his suit upon the theory that the word "off" used in the contract means "of," and that forty per cent "off list price" means forty per cent *of* the list price. More concretely stated Davis' claim was that he was entitled to a compensation representing the difference between forty per cent *of* $8000.00, and $5200.00; or as expressed after being mathematically calculated according to his theory, the difference between $3200.00 and $5200.00, which equals $2000.00. He admitted having been paid $800.00 and claimed a balance due of $1200.00.

■ When the contract was offered in evidence the court sustained the company's contention that there was a variance between the contract alleged and that offered. Plaintiff amended his petition by changing the word "of" to "off," but continued to contend that "forty per cent off list price" meant forty per cent *of* list price, and contended also, as did the company, that the contract was clear and unambiguous. Upon conclusion of the evidence the court submitted to the jury the question of whether under the usage or custom of the "business of selling on commission" the expression "forty per cent off the catalog prices," means forty per cent of such price. The jury answered in the affirmative. The writ was granted upon assignments complaining substantially that it was error to submit the question to a jury, for the reason that the compensation provision of the contract is clear and an affirmative finding would do violence to its plain and unambiguous language. The assignments must be sustained.

It is evident that the expressions "per cent off" and "per cent of" have different meanings. "Off" might mean "off of," illiterately expressed (Webster's New International Dictionary

2nd. ed. p. 1689), but could not be made to mean "of" without doing violence to the language. The substitution of the word "of" for "off" changes its clear meaning. If a merchant should advertise for sale an article listed at the price of $1.00, at ten per cent off list price, a customer would hardly have the temerity to contend that the price to be paid by him for the article would be 10c. He would understand that the price to be paid by him as customer would be 90c, the ten per cent having been taken off. Carrying the illustration further, if the merchant's clerk was earning a compensation representing the difference between ten per cent "off list price," and the price paid by the customer, his commission on the sale, under plaintiff's contention, would be 80c. The merchant would be paying a commission equal to eight-ninths of the sale price of the article in order to get it sold at a cut price. Nothing further need be said in determining the amount of compensation provided as commission in the contract sued upon except that it is a compensation representing the difference between the price calculated at "forty per cent off" a list price of $8000.00, and the customer's price of $5200.00. When the difference between the two prices is thus calculated, it amounts to $400.00.

It appears that notwithstanding the fact that Davis grounded his cause of action upon the written contract declared upon, his own testimony discloses that the measure of compensation provided by the contract was not the measure which he claims was subsequently agreed upon for the sale in question. When asked how the commission was figured his reply was "Fifty and ten off the sales price." Asked by his counsel to explain, he said: "First, fifty per cent off sales price, and ten per cent off the remaining sum, added together, making fifty and ten of (off) catalog price," adding that this "was to have been under the terms of our contract my commission in any of my sales."

It is stated in the opinion of the Court of Civil Appeals that after "it was decided that 'off' and 'of,' in making the sale, meant the same, the court construed and applied the contract to the facts shown by the evidence." It is further stated that "we do not think the evidence shows that the commission on the sale was agreed upon by special oral argument (agreement), as contended by the company. We cannot concur in the conclusion stated in view of the following summary of the pertinent facts and proceedings bearing upon the matter: Davis himself, after making the explanation of the basis of recovery relied upon by him, quoted above, testified in making concrete application that fifty per cent of catalog price of $8000.00 would be $4000.00 and that ten per cent off the remaining

figure would be $400.00; that the two sums added would give a total commission under his contract of $4400.00. When his counsel pointed out to him that this method of computation was not according to the terms of the contract sued upon, which provides forty per cent off, he replied: "My contract with President Harding, then." He further testified that he was forced to discount this $8000.00 transaction; that he telephoned the president at Council Bluffs, Iowa, while negotiating the deal and was told by Harding to discount "the catalog price fifty and ten, deduct from that thirty-five per cent off the catalog price, and the difference $1600.00, shall be your commission. Take it or leave it." Counsel for the company objected to this testimony on the ground of variance between the contract provision for compensation and that relied upon and testified to by Davis, stating that the latter measure of compensation was not supported by any pleading. The trial court admitted the testimony over the objection urged. Shortly before the trial was concluded Davis' counsel requested the court to allow him to file a trial amendment so as to make the allegations and the proof with respect to the $1600.00 commission correspond. Upon inquiry from the court as to what he desired stated in the amendment, he said: "We want to put in it allegations which will be covered by the evidence of this morning that the parties by telephone conversation agreed that the commission in the San Antonio Baseball Club case would be $1600.00. In other words, a modification of the contract itself." After leave to amend had been granted over objection interposed by the company it procured leave to file a reply thereto. Upon reading the reply the court said:

"Gentlemen, although I allowed that trial amendment and the reply to it, I see now that the allowance of both has resulted in such confusion in the issues of this case that I don't believe any court in the world could submit the issues to the jury and the jury render a verdict thereon, and, therefore, I will hear from you as to whether the Court ought not now to withdraw his leave to file."

■ After argument of counsel the court struck out both the trial amendment and the reply and submitted to the jury the sole issue of whether forty per cent "off" and forty per cent "of" as used in the contract meant the same. The jury answered affirmatively and judgment was rendered in favor of Davis. It is obvious from the record stated above that the court erred both in submitting to the jury the issue referred to and in awarding judgment in Davis' favor upon testimony at variance

with the measure of commission declared upon. As stated by Chief Justice Stayton in Morris v. Kasling, 79 Texas 141, 15 S. W. 226, 11 L. R. A. 398, "one suing upon a contract must recover upon the contract alleged, or not at all." Counsel for plaintiff appears to have recognized this elementary principle in procuring leave to file the trial amendment which was subsequently struck out over his protest.

The Court of Civil Appeals also held that the trial court did not err in dismissing without prejudice the company's cross actions. The holding was predicated upon alleged defective pleadings. In view of the necessity of reversing and remanding the case for the errors pointed out, and the further fact that the pleadings upon another trial will doubtless be amended, it is unnecessary to discuss the assignments relating to the dismissal of the cross actions or any of the remaining assignments. Whether the company will desire to set up a cross action to the cause of action as repleaded, or what the allegations will be upon another trial, cannot be definitely known at this time. It is therefore not practicable to pass upon the other assignments.

■ The motion of Davis to dismiss the application for writ of error is denied. The defects in the application pointed out in the motion are that if "one looks to the place directed by the application as supporting the presentation in this Court of any particular assignment of error, he finds that the 'assignment of error' thus referred to in the record" is not the one recited in the application. In other words the record references given in connection with the assignment are incorrect. There are assignments in the application however of which this Court has jurisdiction other than those upon which the writ was granted. Since jurisdiction had already been taken when the motion to dismiss was filed it was thereby extended to all questions of law presented. Moore v. Davis (Com. App.), 27 S. W. (2d) 153.

■ Plaintiff in error alleges in its application that all "the errors * * * assigned * * * were duly assigned and presented in appellant's motion for rehearing * * * in the Court of Civil Appeals, which was * * * overruled * * *." It is not alleged in the motion to dismiss that none of the assignments presenting questions of law embody matters complained of in the complaints set up in the motion for rehearing in the Court of Civil Appeals, but the incorrectness of references to the record is alleged and relied upon mainly. In view of the fact that it is not alleged and pointed out that none of the assignments in the

application are predicated upon grounds urged as a basis of complaint in the motion for rehearing in the Court of Civil Appeals, the incorrectness of the references becomes at this time immaterial. The application is highly defective, but in the motion to dismiss no jurisdictional defect is pointed out.

The judgments of the trial court and Court of Civil Appeals are reversed and the cause is remanded.

Opinion adopted by the Supreme Court November 30, 1938.

Rehearing overruled January 11, 1939.