**KREE INSTITUTE OF ELECTROLYSIS, INC., Appellant,**

**v.**

**Betty FAGEROS, Appellee.**

**No. 5100.**

Court of Civil Appeals of Texas, Waco.

March 16, 1972.

**570**

Wallace & Smith, Waco, for appellant.

G. Stanley Rentz, Waco, for appellee.

## OPINION

JAMES, Justice.

This suit involves a written contract between an employer and an employee calling for personal services. The issue is the right of the employer to terminate the contract.

Appellee Betty Fageros, the employee, brought this suit against the Appellant, Kree Institute of Electrolysis, Inc., the employer, for damages caused by an alleged breach of contract, to wit, by the employer's termination of her employment.

The contract provided that Mrs. Fageros would be employed by Kree for one year at a salary of $70.00 per week plus 10% of all sums received by her which exceeded $140.00 per week. She was employed as an electrologist in a Beauty Salon at the R. E. Cox Co., a department store in Waco, Texas. The work consisted of removing superfluous hair by means of shortwave electrolysis. The contract further provided that Kree would pay for Appellant's transportation to and from New York City, her lodging while there, and the costs of her instruction and training as an electrologist. Mrs. Fageros satisfactorily completed her training in New York City and commenced her work as an electrologist for Kree in the shop at Cox's Store on November 1, 1969, and worked there until her employment was terminated on February 1, 1970.

That portion of the contract under which Kree terminated Mrs. Fageros reads as follows:

"5. Notwithstanding any other provision of this agreement, the Employer shall have the right to terminate the Employee's employment hereunder upon one week's prior notice at any time prior to the expiration of the one (1) year period of hiring in the event the services of the Employee shall prove to be unsatisfactory or detrimental to the business of the Employer, of which the Employer shall be the sole judge, and the Employee hereby agrees to continue in her employment during the period of said one week's notice".

Trial was had before the court without a jury, pursuant to which the trial court awarded Mrs. Fageros a judgment against Kree for $2139.76 damages, same representing the take home pay of $60.24 per week which she would have received for 39 weeks (the unexpired portion of the contract), less $210.00 unemployment pay received by her in the meantime.

Appellant Kree (defendant) offered no testimony at the trial, but only offered some records showing gross sales during the thirteen weeks Appellee Mrs. Fageros was employed under the contract.

Findings of fact and conclusions of law were requested by Appellant and made by the trial court.

Appellant Kree assails the trial court's judgment on eight points, the first seven in effect taking the position that there is no evidence to support the trial court's finding that Kree acted fraudulently and arbitrarily in terminating Mrs. Fageros's employment, and in the alternative that there is insufficient evidence to support the trial court's finding that Appellant Kree acted fraudulently and arbitrarily in terminating Appellee Mrs. Fageros's employment.

We overrule these contentions and affirm the trial court's judgment. We believe that not only is there some evidence to support this finding, but also that the evidence is factually sufficient to support such finding.

In determining the question as to whether there is any evidence to support the finding that Kree acted fraudulently and arbitrarily in firing Mrs. Fageros, we have carefully reviewed the entire record, and herenow recount the following facts pertinent to this inquiry—Appellant Kree informed Appellee Mrs. Fageros that it took time to get the business started and to develop a following and a number of clients; moreover, she was constantly advised by Appellant to this effect; she was told by the Manager of the Beauty Salon (in which her electrolysis department was located) that her work was satisfactory; the District Supervisor of Kree (who initially hired Mrs. Fageros and who leased the electrolysis shop at R. E. Cox Co.) assured her that her work was satisfactory, and that it took time to build up this sort of following or trade; Appellee reported for work regularly, never missing a day from work, normally from 9 A.M. to 6 P.M., never receiving any complaints from customers; that she had repeat customers; that she had business cards printed at her own expense, advertised and distributed "flyers", made business calls, made calls to Baylor University girls dormitories, made talks to students there, never turned down any customers, purchased white uniforms, shoes, hose and underwear at her own expense for work use; that Kree never notified her that she was improperly performing her work, nor did anyone from Kree ever have any consultation or conferences with her concerning her performance, nor did Kree ever inform her that any of her customers complained about her work; that Kree had another electrologist shop in Waco at a Goldstein-Migel Department Store which shop was closed down about a month before Mrs. Fageros was terminated, which last-named shop had been operated by an electrologist who had worked there for several years, and within two weeks after Mrs. Fageros was terminated this electrologist from the Goldstein-Migel shop moved into the R. E. Cox shop and used the same equipment Mrs. Fageros had been using and began operating her business there.

With reference to the manner Mrs. Fageros was terminated, these are the facts—nobody from Kree contacted her at all to tell her she was terminated, but about three or four days before February 1, 1970 (the termination date) the manager of the beauty salon (who was not employed by Kree but by R. E. Cox Co.) told her that "Kree had called them and said just to close the shop up." The equipment was left in place, and within two weeks thereafter the shop was back in operation with the other electrologist who had operated the Goldstein-Migel shop for Kree.

In the light of the above facts established by Mrs. Fageros's testimony, Kree offered no witnesses but introduced gross sales records which showed that Appellant took in $84.00 during the thirteen weeks she worked, this being the extent of Kree's evidence.

This is a contract which from its express terms is contingent upon performance by the employee to the satisfaction of the employer. More specifically, in the case at bar, if the employee's services should be-

come "unsatisfactory or detrimental to the business" of the employer, then the employer had the right to terminate the contract.

■ It is a well-established rule of law that a contract may provide for its termination at the option of one or either of the parties, and such a stipulation, when fairly entered into, will be enforced if not contrary to equity and good conscience. Maddox Motor Co. v. Ford Motor Co. (Tex. Com.App.1930) 23 S.W.2d 333, opinion approved by the Supreme Court.

In the case at bar, since the contract provided that the employer would be the sole judge of the performance on the part of the employee, concerning whether or not it was "unsatisfactory or detrimental to the business" of the employer, the reasonableness of the action of the employer in terminating Mrs. Fageros is not an issue. The contract expressly left that matter to be determined by the employer. The fact that a reasonable man considering the same facts might not have reached this conclusion becomes immaterial in the light of this plain and clear provision of the contract.

However, the determination, altho it may have been unreasonable, must have been in good faith. In other words the employer must in fact have been of the opinion that the employee's performance was unsatisfactory and detrimental to the business of the employer. See Golden State Mutual Life Ins. Co. v. Kelley (Houston First, Tex.Civ.App.1964), 380 S.W.2d 139 error refused, no reversible error, at p. 141 and cases therein cited.

■ The employee may question the honesty and good faith of his employer's dissatisfaction, and a feigned dissatisfaction is not sufficient justification to avoid the continuation of a contract of employment. The question of good faith is a question of fact, and the burden of proof is upon the employee to show that the claimed dissatisfaction is not in good faith. See Coker v. Wesco Materials Corporation (Eastland,

Tex.Civ.App.1963) 368 S.W.2d 883 at p. 884 and cases therein cited. NOA Spears Co. v. Inbau (San Antonio, Tex.Civ.App.1916) 186 S.W. 357, error dismissed.

The theory is, that if the claimed dissatisfaction of the employer toward the employee is not in good faith, a cancellation of the contract on that ground is tainted with fraud. Golden State Mutual Life Ins. Co. v. Kelley, supra (see page 141 of 380 S.W. 2d for cases therein cited).

In the instant case the trial court found that the employer Kree arbitrarily, fraudulently, and without cause terminated the contract in question with employee Mrs. Fageros.

Since Appellant has contended that there is no evidence to support this finding, in resolving this question, this court must reject all evidence favorable to Appellant and consider only the facts and circumstances which tend to sustain the trial court's finding. Cartwright v. Canode (1914) 106 Tex. 502, 171 S.W. 696; Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review 361. There not only is some evidence to support this finding, but there is factually sufficient and substantial evidence to show that the employer Kree's dissatisfaction was not genuine but was feigned. From the record it may reasonably be inferred that Mrs. Fageros was terminated not because of any performance that was unsatisfactory or detrimental to the business, but to make a place for the more experienced electrologist from the other Waco shop.

Appellant's eighth and last point complains of the trial court's granting Appellee leave to file a trial amendment after both sides had rested, and during Appellant's argument to the court. Rule 66 Texas Rules of Civil Procedure, gives the trial court wide latitude in allowing trial amendments to be filed during the trial to cure any defect, fault or omission in a pleading, either of form or substance, or to cover evidence not theretofore covered by plead-

ing, when the presentation of the merits will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The rule further authorizes the trial court to grant a postponement to enable the objecting party to avoid being prejudiced.

Here, the evidence covered by the trial amendment was not objected to by Appellant, and when the trial amendment was filed, Appellant did not request a postponement or continuance.

 If Appellant had any right to complain at the time the trial amendment was filed, he waived it by his failure to request a postponement or continuance. Miller v. Wagoner (Austin, Tex.Civ.App. 1962) 356 S.W.2d 363, at p. 367, no writ history. Also see Rule 63, TRCP.

Affirmed.