**Donald L. YOUNG, individually and d/b/a Evergreen Construction Company, Appellant,**

v.

**C.R. NEATHERLIN d/b/a Neatherlin House Moving, Appellee.**

No. 14–00–01452–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 3, 2003.

Donald L. Young, Kemah, for appellants.

Helen A. Cassidy, Kevin Riley, Sharon McCally, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and FROST.

## OPINION

LESLIE BROCK YATES, Justice.

The parties to a contract for the sale and delivery of two model homes brought claims against each other. Following a jury trial, the trial court awarded the seller damages for breach of contract and attorney's fees and ordered that the buyer take nothing. The buyer appealed. We affirm the trial court's judgment as to the seller's breach-of-contract claim; however, we reverse the attorney's-fees award because the seller failed to segregate his recoverable fees from those fees he was not entitled to recover. We also reverse the take-nothing judgment against the buyer on his claims of fraud and DTPA violations because the trial court erroneously excluded evidence of representations allegedly made by the seller. We affirm the remainder of the trial court's judgment.

### Factual and Procedural Background

Donald L. Young, d/b/a Evergreen Construction Co., entered into a contract with C.R. Neatherlin, d/b/a Neatherlin House Moving, whereby Neatherlin agreed to sell and move two model homes—the "Windsor" and the "Skylark"—to Young's property in Bacliff. Young agreed to pay $35,000 for each house. The payments were to be made in four installments based on the completion of various steps for each house. Neatherlin delivered the Windsor home to Young's property, but a dispute arose over whether he completed delivery under the terms of the contract. Young initially withheld his final payment for the Windsor, prompting Neatherlin to file a mechanic's and materialman's lien on the house. Neatherlin never delivered the Skylark home, although the parties disagree as to why.

Young's attorney ultimately sent Neatherlin a letter detailing Young's complaints, to which Neatherlin responded by filing suit for breach of contract. Neatherlin later amended his petition to include claims for quantum meruit, fraud, and negligent misrepresentation. Neatherlin also sought a declaration that the contract was divisible between the two model homes and that the agreement to sell the Skylark was null and void. In a counterclaim, Young asserted claims for breach of contract, fraud, negligent misrepresentation, conversion, negligence, breach of the duty of good faith and fair dealing, breach of express and implied warranties, filing of a fraudulent lien, quantum meruit/unjust enrichment, and violations of the DTPA.

Based on the jury's findings, the trial court entered judgment ordering Young to pay Neatherlin $200 in actual damages, $40,000 in attorney's fees, and $10,000 in the event of appeals to the court of appeals and the supreme court. The court further ordered that Young take nothing by his claims. Young timely appealed.

### Evidence of Neatherlin's Damages

■ In his first issue, Young claims Neatherlin presented insufficient evidence to support the jury's finding of damages for breach of contract. The jury found that Young failed to comply with the parties' agreement and that his failure to comply was not excused. However, the jury also found that the portion of the agreement regarding the Skylark model home was null and void.[1] The jury then awarded Neatherlin $200 in damages for Young's breach of contract. Young claims that the only evidence offered by Neatherlin as to his damages related to additional costs associated with Neatherlin's resale of the Skylark, and therefore Neatherlin presented no evidence or, alternatively, insuffi-

cient evidence of any damages stemming from Young's failure to comply with the surviving portion of the contract. We disagree.

■ In the submission on Neatherlin's damages, the jury was instructed to consider only "out-of-pocket expense" as an element of damages. The charge defined "out-of-pocket expense" as "reasonable and necessary costs that were incurred by [Neatherlin]." Because neither party objected to this question, we review the sufficiency of the evidence in light of the charge submitted. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001). Neatherlin testified that Young did not make his final payment on the Windsor model home. As a result, Neatherlin said he was forced to hire attorneys to file a mechanic's and materialman's lien on the property. Neatherlin's attorney testified that the legal fees associated with filing this lien and collecting Young's final payment were approximately $2,000. Based on the charge's definition of damages, we conclude this evidence is both legally and factually sufficient to support the jury's finding of $200 in damages for Young's breach of the non-void portion of the contract. Young's first issue is overruled.

### Mutuality of Obligation

■ In Young's second issue, he contends the trial court erred in submitting Question 1, on his alleged breach of contract, because the contract failed as a matter of law for lack of mutuality. However, Young did not object at trial to the submission of this question. Accordingly, Young's complaint is waived. *See Flo Trend Sys., Inc. v. Allwaste, Inc.,* 948 S.W.2d 4, 10 (Tex.App.-Houston [14th Dist.] 1997, no writ).

---

1. Young does not challenge this finding on appeal.

Even if we were to consider Young's argument, however, we find it meritless. Young's complaint is based on the following provision in the contract:

> [Neatherlin] reserves the right to deem this contract null and void, if in his opinion there are obstacles and/or circumstances that would make it unfeasible to deliver the above referenced houses. In this event all money paid will be refunded.

Young claims that because the contract permitted Neatherlin to declare the contract null and void, his promise to perform was illusory and the contract is unenforceable. However, courts strive to construe a contract to promote mutuality and to avoid a construction that makes promises illusory. *See Portland Gasoline Co. v. Superior Mktg. Co.*, 150 Tex. 533, 243 S.W.2d 823, 824 (1951), *overruled on other grounds by Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603 (Tex.1998). When, as here, performance is conditioned on one party's judgment or determination, courts imply a requirement that such judgment is exercised in good faith. *See Golden State Mut. Life Ins. Co. v. Kelley*, 380 S.W.2d 139, 141 (Tex.Civ.App.-Houston 1964, writ ref'd n.r.e.); *see also* 13 WILLISTON ON CONTRACTS § 38:21, at 459–60 (4th ed.2000) (noting that, when one party's promise is conditional on that party's satisfaction, courts generally require the party to exercise honest judgment and "such contracts have been almost universally upheld"). We conclude the trial court did not err in submitting Question 1 to the jury. Young's second issue is overruled.

### Neatherlin's Attorney's Fees

In his third and fourth issues, Young attacks the portion of the judgment awarding $40,000 in attorney's fees to Neatherlin. Young argues this award is excessive and should be reformed or, in the alternative, the award should be re-versed based on Neatherlin's failure to segregate the fees attributable to claims for which recovery of attorney's fees is permissible. Because we find that Neatherlin failed to segregate his attorney's fees, we sustain Young's fourth issue and reverse the attorney's-fees award.

Neatherlin contends Young waived his complaint on segregation of attorney's fees because he did not object to the testimony of Neatherlin's counsel. However, the Texas Supreme Court has held that error is preserved by an objection to the jury charge on the ground that the charge did not properly segregate attorney's fees. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex.1991). Here, Young properly objected to the jury charge on this ground. Thus, Young preserved error on this issue.

When a lawsuit includes two or more claims, one or more of which would not entitle a party to recover attorney's fees, the party seeking to recover attorney's fees must segregate the time spent on a claim for which fees are recoverable from the time spent on a claim for which fees may not be recovered. *See Amerada Hess Corp. v. Wood Group Prod. Tech.*, 30 S.W.3d 5, 13 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). An exception arises when the attorney's fees are incurred in connection with claims that arise out of the same transaction and are so interrelated to the other claims that their prosecution or defense entails proof or denial of essentially the same facts. *Id.* at 13–14.

In this case, in addition to claims for declaratory relief and breach of contract, for which attorney's fees may be recovered, Neatherlin asserted claims for quantum meruit, fraud, and negligent misrepresentation. Neatherlin also was re-

quired to defend against several contract and tort claims by Young. Neatherlin's counsel admitted on cross-examination that he did not attempt to segregate his attorney's fees based on claims. The record contains no evidence suggesting that these claims were all so interrelated as to require proof or denial of essentially the same facts. Accordingly, we sustain Young's fourth issue. The appropriate remedy in this circumstance is to remand the attorney's-fees issue to the trial court. *See id.* at 14–15. Because we reverse the award of attorney's fees to Neatherlin and remand for further proceedings regarding those fees, we do not address Young's complaint that the award is excessive.

### Young's Attorney's Fees

In his fifth issue, Young claims the trial court erred by refusing to award his attorney's fees. In response to an unconditionally submitted question, the jury found that a reasonable fee for preparation and trial by Young's attorney in this case was $40,000—the same amount of fees the jury found for Neatherlin's attorneys. Under the Declaratory Judgments Act, a trial court may award attorney's fees "as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). The decision whether to award attorney's fees is committed to the sound discretion of the trial court. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). Young does not directly attack the trial court's denial of his request for attorney's fees. Instead, he complains that the trial court refused to rule on his request for findings of fact and conclusions of law regarding the court's denial. However, the rules regarding findings of fact and conclusions of law apply only to nonjury trials. *See* TEX.R. CIV. P. 296–299a. Young cites no authority that would require a court to enter findings and conclusions in a situation such as this. Further-

more, even if we were to find the court erred by failing to enter the requested findings, Young has not demonstrated that awarding him attorney's fees would be equitable and just, which are matters of law. *See Bocquet,* 972 S.W.2d at 21. Thus, any purported error would be harmless. We overrule Young's fifth issue.

### Evidence of Fraudulent Lien

In his sixth issue, Young asks that we reverse the trial court's judgment that he take nothing on his claim that Neatherlin violated Chapter 12 of the Civil Practice and Remedies Code by filing a fraudulent lien. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 12.001–.007 (Vernon 2002). In response to Question 11, the jury failed to find that Neatherlin filed a fraudulent lien. Young claims the jury's answer was not supported by legally or factually sufficient evidence. We disagree.

A person owning property against which a fraudulent lien is filed may bring an action for injunctive relief or monetary damages. *See id.* § 12.003. Question 11 asked the jury whether Neatherlin filed a fraudulent lien, which the charge defined as a lien filed with (1) knowledge that it was fraudulent, (2) intent that it be given legal effect, and (3) intent to cause physical injury, financial injury, or mental anguish or emotional distress. *See id.* § 12.002(a). Young asserts that the mechanic's and materialman's lien Neatherlin filed to secure Young's final payment for the Windsor model home was presumptively fraudulent because Neatherlin never completed his obligations under the parties' contract. *See* TEX. GOV'T CODE ANN. § 51.901(c) (Vernon 1998) (stating that, for purposes of that statute, a document is presumed to be fraudulent if it purports to create a lien against property and it was not created by consent or agreement of the property owner). However, Neatherlin unambiguously

testified that he completed the terms of the contract with respect to the Windsor model home. The evidence Young cites in response—mostly Young's own testimony—relates only to the question of whether the contract was in fact completed. Young points to no evidence showing that Neatherlin knew he was not entitled to his final payment when he filed the lien or that he filed the lien with intent to cause Young injury or emotional distress. We overrule Young's sixth issue.

## Exclusion of Evidence

■ In his seventh issue, Young claims the trial court erred in excluding testimony regarding certain representations Neatherlin made in connection with the contract. In his counterclaim, Young alleges he was induced to enter the contract by Neatherlin's fraudulent misrepresentations. Young also alleged that Neatherlin violated the DTPA. However, when Young's attorney attempted to ask Young about Neatherlin's representations relating to the contract, the trial court sustained Neatherlin's objections.[2] Young then made an offer of proof in which he testified that, among other things, Neatherlin misrepresented the extent of what would be included as part of the house. Young claims the exclusion of this evidence was reversible error. We agree.

■ Although statements about the meaning of a contract's terms are ordinarily not admissible to add to, vary, or contradict the terms of an unambiguous written contract, they are admissible to show whether a party was fraudulently induced to enter the contract. *See Marburger v. Seminole Pipeline Co.*, 957 S.W.2d 82, 86 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). Furthermore, the parol evidence rule does not apply to oral representations that serve as the basis for a DTPA action. *Weitzel v. Barnes*, 691 S.W.2d 598, 599–600 (Tex.1985). Accordingly, the trial court erred in excluding Young's proffered testimony regarding Neatherlin's alleged misrepresentations.

■ Neatherlin responds first by claiming Young waived his complaint because he did not properly object to the exclusion of this evidence. Neatherlin contends Young never specifically explained that this testimony was being offered to prove fraud as opposed to being offered to vary the terms of the contract, which the trial court determined to be unambiguous. However, in response to Neatherlin's objection, Young's attorney clearly established a proper basis for this testimony:

> Your honor, we've got claims here for deceptive trade practices. If we can't show what Mr. Neatherlin's representations were, then the statute means nothing. . . .
>
> . . . .

2. Young's attorney first asked Young, "[W]hen you had that meeting with Mr. Neatherlin, did he make representations to you about what was covered by the contract?" Neatherlin's attorney objected on the grounds the question called for hearsay and violated the parol evidence rule. The trial court sustained the objection without specifying the basis. Young's attorney tried again later: "In that meeting on September 4th, Mr. Young, 1998, did Mr. Neatherlin make representations to you about what the contract provisions meant?" Neatherlin's attorney again objected based on hearsay and the parol evidence rule. This time, the trial court indicated that Neatherlin's statements were not hearsay, but he nevertheless sustained the objection. Young's attorney later asked, "[I]n that September 4th, 1998, meeting that you had with Mr. Neatherlin, did he make any representations to you about the extent of the wiring and the plumbing in the Windsor and the Skylark?" Neatherlin's attorney objected under the parol evidence rule, and the trial court sustained the objection.

Mr. Neatherlin made some representations to [Young]. We need to find out what those representations were about what the contract meant and to the extent that Mr. Young relied on them or may have been fraudulently induced into entering the contract or deceived by deceptive trade practices.

We find Young did not waive his complaint.

 Next, Neatherlin claims that any error in excluding Young's testimony was harmless. A judgment cannot be reversed based on the improper exclusion of evidence unless the trial court's error probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1. An error in the exclusion of evidence requires reversal if it is both controlling on a material issue and not cumulative. *Mentis v. Barnard,* 870 S.W.2d 14, 16 (Tex.1994). According to Neatherlin, even if the court had admitted Young's testimony, Young failed to establish that Neatherlin's conduct was fraudulent or deceptive because Young did not present evidence regarding Neatherlin's intent at the time he made the alleged misrepresentations. However, a party's intent may be inferred from subsequent acts after the representation is made. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986). Here, the exclusion of Young's testimony prevented the jury from assessing Neatherlin's actions in light of his alleged representations. Because the excluded testimony goes to the heart of Young's fraud and DTPA claims, we conclude it is controlling on a material issue. Based on our review of the record, we further find that Young's excluded testimony is not cumulative. Ac-

cordingly, we sustain Young's seventh issue and remand his fraud and DTPA claims for a new trial. *See Mentis,* 870 S.W.2d at 16.

**Reporter's Record**

 In his eighth issue, Young claims he is entitled to a new trial under Texas Rule of Appellate Procedure 34.6(f), based on the court reporter's alleged refusal to file a complete and accurate record, including all offered and admitted exhibits. Young's brief fails to set forth any details regarding these alleged omissions or inaccuracies in the record. Young instead attempts to incorporate by reference arguments advanced in his petition for writ of mandamus, which he filed contemporaneously with his appellate brief.[3] However, the Rules of Appellate Procedure plainly require the issues and pertinent facts to be set forth in the brief itself. TEX.R.APP. P. 38.1; *see also Francis v. State,* 746 S.W.2d 276, 278 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd) (refusing to consider a brief appellant had filed in another case that appellant attempted to incorporate by reference).[4] Furthermore, we note that incorporation of any portion of Young's petition for writ of mandamus would result in Young's brief exceeding the fifty-page limit set forth in Rule 38.4. Finally, and most significantly, Young has not demonstrated that any of the allegedly missing portions of the reporter's record are "necessary to the appeal's resolution." *See* TEX.R.APP. P. 34.6(f)(3). Young's eighth issue is overruled.

**Conclusion**

Because Neatherlin failed to segregate his recoverable attorney's fees from those

---

3. This court denied Young's petition in a separate order issued on March 21, 2002.

4. As of January 1, 2003, a party may now adopt by reference another document filed "by another party in the same case." *See*

TEX.R.APP. P. 9.7. This new rule does not apply to a party's attempt to incorporate into a brief a separate filing made by the same party.

he was not entitled to recover, we reverse the portion of the judgment awarding Neatherlin $40,000 in attorney's fees and remand for further proceedings on Neatherlin's attorney's fees. We also reverse the portion of the judgment ordering Young to take nothing on his fraud and DTPA claims, based on the trial court's erroneous exclusion of evidence, and we remand these claims for a new trial. The trial court's judgment is otherwise affirmed.